**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**THOMAS PEYTON, JR.,**

     **Petitioner,**

**vs.**  :       **CIVIL ACTION 05-00482-KD-B**

**GWENDOLYN MOSLEY,**

     **Respondent.**

<u>**REPORT & RECOMMENDATION**</u>

This is an action under 28 U.S.C. § 2254 by an Alabama inmate, which was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Local Rule 72.2(c)(4), and Rule 8 of the Rules Governing Section 2254 Cases.  This action is now ready for consideration.  The state record is adequate to determine Petitioner's claims, and no federal evidentiary hearing is required. <u>Kelley v. Secretary for Dep't of Corrs.</u>, 377 F.3d 1317 (11th Cir. 2004).

Upon careful consideration, it is recommended that the following claims be dismissed without prejudice for failure to exhaust:(1) Petitioner's claim that his inculpatory statements were involuntary; (2) Petitioner's claim that the indictment failed to charge an offense; and (3) Petitioner's claim that his life sentence constituted cruel and unusual punishment.  It is further recommended that Petitioner's habeas petition be denied, that this action be dismissed, and that judgment be entered in favor of Respondent and against Petitioner Thomas Peyton, Jr., on Petitioner's Sixth Amendment claim.

I.   <u>Background Facts</u>

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[1]

> [O]n July 18, 2002, Investigator Dean McGowan of the Baldwin County Sheriff's Department was contacted by the Baldwin County Department of Human Resources ("DHR") concerning a suspected case of child sexual abuse. McGowan and Stephanie Buehler, a DHR social worker, interviewed eight-year-old B.P. ("the victim"). Buehler took the lead role during the interview; McGowan took notes during the interview but did not otherwise participate in interviewing the victim. Also present during the interview was the victim's mother.
>
> During the interview, Buehler and the victim discussed "good touches" and "bad touches." They also discussed which parts of the body were considered "private parts." During this part of the discussion, Buehler showed the victim a book with drawings of a girl and a boy wearing bathing suits. Buehler explained that the areas under a bathing suit were considered to be "private parts" of the body. Buehler asked the victim if anyone had ever touched his private parts, to which the victim responded that his grandfather, T.P., had touched him on his buttocks. Further questioning established that on at least one occasion his grandfather had touched the victim's buttocks through his clothing. On at least one other occasion, the victim told Buehler that his grandfather had taken him inside a camper, unfastened his pants, and placed his hands under his underwear on his bare buttocks. The victim stated that his grandfather told him not to tell his daddy-T.P.'s son-what had happened. The victim told Buehler the last time that his grandfather had touched his buttocks

---

[1]AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Id. (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

occurred just a few days before the
interview. . . .

Later that day, McGowan interviewed T.P.
at the sheriff's office in Robertsdale.
McGowan explained to T.P. the nature of the
investigation.  He advised T.P. of his
Miranda rights.  T.P. indicated that he
understood those rights; he thereafter
elected to waive those rights and to be
interviewed by McGowan.  Initially, T.P.
denied touching his grandson inappropriately.
He implied that the allegations were the
result of custody issues between the victim's
parents-his son and former daughter-in-law.
Later in the interview, however, T.P. asked
McGowan "what would happen to somebody if
they committed the crime that he was being
accused of." (R. 30.)  Eventually, T.P. told
McGowan that he was going to tell him the
truth.  According to McGowan, T.P. said that
the victim "liked to grab people on the penis
and on the butt, and he said that [the
victim] had done that to him."  (R. 30.)  The
victim's actions made T.P. think that he
"might be interested in having some kind of
sexual contact with him." (R. 30.)  T.P. then
told McGowan that when the victim came to see
him at his camper he "fondled his butt cheeks
on the outside of his clothes." (R. 31.)  A
few days later, he said, he took the victim
inside the bedroom of the camper, unbuttoned
the victim's pants, put his hands down the
back of the victim's underwear, and "played
with his little hiney cheeks." (R. 31.)  T.P.
agreed to give McGowan an audiotaped
statement to this effect.  Following T.P.'s
audiotaped statement, McGowan arrested T.P.
on a charge of first-degree sexual abuse.

At trial, Buehler and McGowan testified
regarding their actions during the
investigation.  Although the State had
planned to have the victim testify, it
advised the circuit court that the victim
would be unable to testify.  After hearing
expert testimony to the effect that forcing
the victim to testify could result in
emotional trauma to the victim, the circuit
court determined that the victim was
"unavailable to testify," and that his out-
of-court statements to Buehler were

>          admissible under § 15-25-32, Ala. Code 1975.
>          Over the objection of defense counsel,
>          Buehler was permitted to testify regarding
>          the victim's statements to her.
>
>          Two other witnesses also testified-
>          M.B.L. and L.A.B.  Both witnesses testified
>          that T.P. had at one time been married to
>          their aunt.  Both witnesses-who were adults
>          at the time of this trial-testified that
>          while they were children T.P. had sexually
>          abused them.  The circuit court instructed
>          the jury that M.B.L. and L.A.B's testimony
>          could not be considered as evidence of T.P.'s
>          guilt in the present case.  Instead, the
>          court advised, the evidence was being offered
>          in order to establish T.P.'s motive,
>          opportunity, intent, preparation, or plan, or
>          that the contact did not occur as a result of
>          mistake or accident.
>
>          The defense presented no witnesses.  At
>          the close of all the evidence, the circuit
>          court instructed the jury on the law
>          applicable to T.P.'s case.  The jury returned
>          a verdict finding T.P. guilty of first-degree
>          sexual abuse.  This appeal followed.

T.P. v. State, 911 So. 2d 1117, 1119-21 (Ala. Crim. App. 2004)

(footnotes omitted).

The record shows that Petitioner was indicted by the Baldwin County Grand Jury on August 23, 2002, and charged with first degree sexual abuse.  (Doc. 23, att. 2 at 4).  Petitioner entered a plea of not guilty to the charge, and his jury trial was set for November 5, 2003.  (Id. at 5).  On that date, the jury returned a verdict of guilty, and Petitioner was sentenced under the Habitual Felony Offender Act to life imprisonment.  (Id. at 5, 155).

On December 30, 2004, Petitioner filed a written notice of appeal to the Alabama Court of Criminal Appeals.  (Id. at 6).  On October 29, 2004, the Alabama Court of Criminal Appeals affirmed

4

petitioner's conviction by memorandum opinion.  <u>T.P. v. State</u>, 911 So. 2d 1117, 1124 (Ala. Crim. App. 2004).  The Alabama Court of Criminal Appeals denied Petitioner's application for rehearing on January 7, 2005.  (Doc. 14 at 2).  On March 11, 2005, the Alabama Supreme Court denied Petitioner's petition for a writ of certiorari, and a Certificate of Judgment was entered on that date. (Doc. 23, att. 1 at 1; att. 9).  Petitioner did not seek post-conviction relief under <u>Alabama Rule of Criminal Procedure</u> 32.

On August 15, 2005, Petitioner filed a petition for a writ of habeas corpus with this Court.  (Doc. 1).  On October 18, 2005, the Court ordered Petitioner to refile his habeas petition on this Court's form, which he did on November 7, 2005.  (Doc. 7).

In his habeas petition, Petitioner raises four claims: 1) his inculpatory statements to police investigators were not given willingly, knowingly, or voluntarily, and in contravention of his <u>Miranda</u> rights, which were not waived; 2) the indictment failed to charge an offense; 3) the life sentence imposed upon his conviction constitutes cruel and unusual punishment; and 4) admission of the victim's out-of-court statements violated the Confrontation Clause of the Sixth Amendment to the United States Constitution. (Doc. 7 at 7-9).  Petitioner raised none of these claims in a petition for post-conviction relief and raised only his Sixth Amendment claim on direct appeal. The remaining claims are raised for the first time in the instant habeas petition.

In Respondent's Motion to Dismiss a "Mixed Petition" (Doc. 14), Respondent asserts that Petitioner's habeas petition contains both exhausted and unexhausted claims, and thus presents a "mixed"

petition that must be dismissed.    According to Respondent, Petitioner's claims, specifically: 1) that his inculpatory statements to police were involuntary; 2) that the indictment failed to charge an offense because it lacked specificity; and 3) that his life sentence constitutes cruel and unusual punishment, have not been exhausted in the state courts because Petitioner remains eligible to raise these claims in a Rule 32 petition. Respondent also contends that while Petitioner exhausted his Sixth Amendment Confrontation Clause claim, that claim should nevertheless be dismissed because it is without merit.

In response to Respondent's motion to dismiss, Petitioner filed a motion for leave to amend his habeas petition in order to remove any unexhausted claims. (Doc. 16).   Petitioner seeks to dismiss without prejudice his claims that: 1) his statement to police was involuntary; and 2) that a sentence of life imprisonment constitutes cruel and unusual punishment, so that those claims may be exhausted in the state courts.  Petitioner further requests that his claim that the indictment against him failed to charge an offense be dismissed without prejudice should this Court find that such claim must first be presented to the state courts.   In addition, Petitioner argues that he exhausted his Sixth Amendment claim by raising it on direct appeal before the Alabama Court of Criminal Appeals, and that this claim is ripe for federal habeas review.

II.  <u>Discussion</u>

  A.   <u>Exhaustion Principles</u>

  Before a federal court may grant habeas relief to a state

prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1731 (1999).

The governing statutory language is found in 28 U.S.C. § 2254:

> b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b) & (c) (1996).

"Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims." O'Sullivan, 526 U.S. at 843, 119 S. Ct. at 1732. A habeas claim is deemed to be exhausted when "it is fair to assume that further state proceedings would be useless." Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989). This standard is met when the precise issue

raised in a habeas corpus petition has been "fairly presented" to the state's highest court. Id., citing Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971).

In construing the exhaustion requirement, the Supreme Court has explained that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's appellate review process." O'Sullivan, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732 (1999). A complete round of the state appellate process includes discretionary appellate review "when that review is part of the ordinary appellate review procedure in the State." Id. at 847, 119 S. Ct. at 1733. In Alabama, the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to the Alabama Court of Criminal Appeals, and an application for discretionary review by the Alabama Supreme Court. See Ala. R. App. P. 4, 39, 40. If an inmate fails to give the state courts one full opportunity to resolve constitutional claims prior to filing his federal habeas petition, his claims are considered unexhausted.

B. Petitioner's Motion to Amend

Petitioner's Motion to Amend (Doc. 16) requests leave to amend his petition and dismiss without prejudice any unexhausted claims so that they may be exhausted in the state courts. Federal Rule of Civil Procedure 15(a) governs the amendments to pleadings and provides that, after any responsive pleading has been filed, subsequent amendments are permitted only with the leave of the

district court.  Gramegna v. Johnson, 846 F.2d 675, 678 (11th Cir. 1988) (citing Espey v. Wainwright, 734 F.2d 748, 750 (11th Cir. 1984)).  While the decision whether to grant leave to amend lies within the discretion of the district court, Rule 15(a) operates in favor of the disposition of a claim on the merits.  Thus, "unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial," Espey, 734 F.2d at 750, and leave to amend shall be freely given where justice so requires. Id.

In the instant case, Respondent has demonstrated that Petitioner failed to present three of his four claims, namely 1) that his inculpatory statements were involuntary, 2) that the indictment failed to charge an offense, and 3) that his life sentence constituted cruel and unusual punishment, to the Alabama courts for review; thus, he has failed to satisfy the exhaustion requirement.  Accordingly, the undersigned recommends that Petitioner's Motion to Amend (Doc. 16) be granted and that the three above-referenced claims be dismissed without prejudice.

C. Petitioner's Sixth Amendment Claim

Petitioner asserts that he is entitled to habeas relief because his conviction was based on testimonial evidence presented in violation of his rights under the Confrontation Clause of the Sixth Amendment.  Specifically, Petitioner contends that he was not allowed to cross-examine the victim, whose out-of-court statements to a social worker and a sheriff's office investigator were

admitted at trial.[2]

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state court convictions.  Under the AEDPA, when a state court has adjudicated a claim, in order to obtain federal habeas relief, a petitioner must show that a decision by the Alabama state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court

_____

[2] The trial court declared the child victim to be unavailable to testify pursuant to § 15-25-32, Ala. Code 1975, which provides:

An out-of-court statement may be admitted as provided in Section 15-25-31, if:

(1) The child testifies at the proceeding, or testifies by means of video tape deposition as provided by Section 15-25-2, or testifies by means of closed circuit television as is provided in Section 15-25-3, and at the time of such testimony is subject to cross-examination about the out-of-court statements; or

(2)a. The child is found by the court to be unavailable to testify on any of these grounds:

...

5. The child's incompetency, including the child's inability to communicate about the offense because of fear or a similar reason; or

6. Substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceeding or by means of closed circuit television....

proceeding." 28 U.S.C. § 2254(d)[3]; <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405 (2000).  A state court's decision can be "contrary to" federal law either (1) if it fails to apply the correct controlling authority, or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. <u>Id.</u> at 405-06. A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. <u>Id.</u> at 407. "Federal habeas relief is available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.' " <u>Parker v. Head</u>, 244 F.3d 831 (11th Cir. 2001) (citing <u>Williams</u>, 529 U.S. at 409). It is the objective reasonableness, not the correctness per se, of the

---

[3] 28 U.S.C. § 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim adjudicated on the merits in State court proceedings unless the adjudication of the claim:

(1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or

(2) resulted in a decision based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceedings.

state court decision that this court must decide.  See <u>Williams</u>,
529 U.S. at 411.

Further, a state court's determinations of fact shall be
"presumed to be correct," and the habeas petitioner "shall have the
burden of rebutting the presumption of correctness by clear and
convincing evidence." 28   U.S.C. § 2254(e)(1). "However, the
statutory presumption of correctness applies only to findings of
fact made by the state court, not to mixed determinations of law
and fact." <u>Parker</u>, 244 F.3d at 835 (citing <u>McBride v. Sharpe</u>, 25
F.3d 962, 971 (11th Cir. 1994)).

In this action, Petitioner raised his Sixth Amendment claim on
direct appeal.  The Alabama Court of Criminal Appeals, applying the
United States Supreme Court's decision in <u>Crawford v. Washington</u>,
541 U.S. 36, 124 S. Ct. 1354 (2004), determined that, although the
child's out-of-court statements constituted inadmissable hearsay,
the statements amounted to harmless error in light of the other
evidence admitted at trial.[4] <u>T.P. v. State</u>, 911 So. 2d 1117, 1124
(Ala. Crim. App. 2004).  Most significant to the court was
Petitioner's confession that he sexually abused his grandson.  <u>Id.</u>
at 1124.  While the court recognized that the State was required to

---

[4] Petitioner's argument that <u>Crawford</u> eliminated the
harmless error rule in Confrontation Clause cases is incorrect.
(Doc. 30 at 1).  The harmless error rule has been consistently
applied following <u>Crawford</u>.  <u>See</u>, <u>e.g.</u>, <u>Grossman v. McDonough</u>,
466 F.3d 1325, 1339 (11th Cir. 2006) (applying harmless error
rule in a Confrontation Clause case); <u>U.S. v. McClain</u>, 377 F.3d
219, 222 (2d Cir. 2004) ("It is well established that violations
of the Confrontation Clause, if preserved for appellate review,
are subject to harmless error review, however, and <u>Crawford</u> does
not suggest otherwise."); <u>accord</u> <u>U.S. v. Nielsen</u>, 371 F.3d 574,
581 (9th Cir. 2004).

offer independent proof of the *corpus delicti* of the charged offense in order to authorize admission of Petitioner's confession, it found that the State had in fact done so.[5]  Id.   The court held that the social worker's testimony that the victim told her that someone had touched his private parts, as well as the State's exhibits of drawings depicting where the victim was touched, all of which were admitted without any objection from the defense, constituted lawful evidence of *corpus delicti*.  Id. at 1125.

In his habeas petition, Petitioner argues that the decision of the Alabama Court of Criminal Appeals is contrary to federal law. The Court disagrees for two reasons.  First, it was not error, harmless or otherwise, for the trial court to admit the victim's hearsay statements where Petitioner did not object to that evidence when it was offered at trial.  Second, even assuming error in the admission of the victim's hearsay statements, that error was harmless.

The record shows that, prior to trial, Petitioner filed a motion *in limine* to exclude hearsay testimony related to the victim's statements that Petitioner had sexually abused him.  (Doc. 23, att. 2 at 30).  The trial court denied the motion and proceeded with the trial.  (Id. at 85-86).  At trial, the first witness to testify was Officer Dean McGowan with the Baldwin County Sheriff's Office.  ( Id. at 90).  Officer McGowan testified,    *without*

---

[5] The Alabama Court of Criminal Appeals noted that "the corpus delicti consists of two elements, 1) that a certain result has been produced,... and 2) that some person is criminally responsible for the act."  T.P., 911 So. 2d at 1125 (quoting Johnson v. State, 473 So. 2d 607, 608 (Ala. Crim. App. 1985)).

*objection*, that, on July 15th or 16th, 2002, he was contacted by the Baldwin County Department of Human Resources ("DHR") "in reference to a complaint that they had received or allegations that they had received of child sex abuse concerning a child named [B.P.]. . . ." (Id. at 91).  Officer McGowan testified, *without objection*, that the child had identified Petitioner as his abuser. (Id. at 95).   Officer McGowan testified that he conducted an interview with Petitioner and that he read Petitioner his Miranda rights. ( Id. at 93).  Officer McGowan testified, *without objection*, that he informed Petitioner "that the child had stated that [Petitioner] had touched him inappropriately, both over his clothes and under his clothes." (Id. at 95).

*On cross-examination*, Petitioner's attorney asked Officer McGowan to tell him the substance of the child's allegations, to which Officer McGowan responded, "[t]he child had made the statement – had made the disclosures in the interview with the social worker that his grandfather had touched him and I believe the child called it his bad spots.  And then the social worker, I believe, asked him, you know, if he – they have a little book that they have pictures and I'm sure she'll explain that but asked the child to show her where he was talking about and the child identified the places on his body where he had been touched." (Id. at 101).  Petitioner's attorney then asked, "what places were identified," to which Officer McGowan responded, "I believe just his butt." (Id.).

The next witness at trial was Stephanie Buehler, a social

worker for the Baldwin County DHR. (Id. at 102). Ms. Buehler testified that she and Officer McGowan had interviewed the child in July, 2002, and that she had given the child a book that showed a little boy and a little girl in bathing suits covering their private parts. (Id. at 105). She testified, *without objection*, that she asked the child if anyone had ever touched him on his private parts, and he circled the buttocks area. (Id. at 106). The State proffered two drawings depicting the buttocks area circled by the child, and the trial court admitted the drawings into evidence, *without objection*, and published them to the jury. (Id.). Ms. Buehler then testified, *without objection*, that she asked the child "if anybody had ever touched him on his private parts before, and he said, yes, his granddaddy had." (Id. at 107). The State's attorney then asked Ms. Buehler if the child had given her any details about how the abuse happened, and, at that point, Petitioner's attorney objected for the first time at trial, seeking to renew his pre-trial motion *in limine*. (Id.). The judge overruled Petitioner's objection but noted Petitioner's continuing objection to that line of questioning. (Id.).

Although Petitioner did file a pre-trial motion *in limine* related to the victim's hearsay statements that Petitioner sexually abused him, the statements were introduced and admitted into evidence on at least four separate occasions, through two different witnesses, before Petitioner objected at trial. (Id. at 72-75, 85, 91). Under Alabama law, "it is well settled that an adverse ruling on a motion in limine does not preserve the issue for appellate review unless an objection is made at the time the evidence is introduced." McNabb v. State, 887 So. 2d 929, 972 (Ala. Crim. App.

2001); see also Hammonds v. State, 2006 WL 1120652, *11 (Ala. Crim. App. 2006) ("A party who suffers an adverse ruling on a motion in limine can preserve the ruling for post-judgment and appellate review *only* by objecting to the introduction of the proffered evidence and assigning specific grounds at the time of trial, unless he or she obtains the express acquiescence of the trial judge that a subsequent objection and assignment of grounds are not necessary.") (emphasis in original, internal quotation marks omitted); accord Grimsley v. State, 678 So. 2d 1197, 1208 (Ala. Crim. App. 1996).   Thus, while testimonial hearsay statements are inadmissible under Crawford if not subject to cross-examination, the admission of the victim's hearsay statements in this case was not error because Petitioner failed to object to the statements until *after* they had been admitted into evidence.[6]   Therefore, the trial court did not err in admitting the victim's testimonial hearsay statements that Petitioner sexually abused him.

Assuming arguendo that the trial court did err in admitting

_____

[6] Petitioner cites Hawkins v. State, 615 So. 2d 651, 653 (Ala. Crim. App. 1992), as support for his argument that he did not need to object to the victim's hearsay statements at trial once the trial court denied his motion *in limine*.  However, Hawkins is inapposite to the present case because it holds only that the denial of a motion to suppress *illegally obtained* evidence is sufficient to preserve the objection for trial.  The denial of a motion in limine however is not sufficient to preserve an objection to evidence that is not illegally obtained. See Bacot v. State, 597 So. 2d 754, 756-57 (Ala. Crim. App. 1992) ("A distinction is drawn between a motion in limine to exclude prejudicial evidence and a pretrial motion to suppress evidence. . . .  Because the motion was a motion in limine and no objection was made at the time [] the items [were] received into evidence, (sic) the appellant has failed to preserve this issue for our consideration.").  The present case did not involve illegally seized evidence; therefore, Petitioner was required to object to the evidence at the time of trial in order to preserve the issue for review.

the victim's hearsay statements that Petitioner had sexually abused him, the Alabama Court of Criminal Appeals correctly found that any error was harmless. In <u>Grossman v. McDonough</u>, 466 F.3d 1325 (11th Cir. 2006), the Eleventh Circuit rejected petitioner's request for habeas relief where the trial court erred in admitting petitioner's co-defendant's confession, which implicated petitioner and was not subject to cross-examination. The court found that the Confrontation Clause violation was "harmless" given the overwhelming evidence of petitioner's guilt. The court applied the habeas "harmless error" standard, finding that the inadmissible hearsay evidence did not have a "substantial and injurious effect or influence in determining the jury's verdict."[7]  <u>Id.</u> at 1340.

---

[7] The habeas harmless error standard is even more difficult to satisfy than the State's "beyond a reasonable doubt" standard. In <u>Grossman</u>, the Eleventh Circuit explained:

> In <u>Brecht</u>, the Supreme Court noted the differences between the <u>Kotteakos</u> harmless error standard and the "harmless beyond a reasonable doubt" standard, and determined that the harder-to-establish <u>Kotteakos</u> formulation was more appropriate in the habeas context, which is designed to afford relief only to those whom society has "grievously wronged." <u>Brecht</u>, 507 U.S. at 637, 113 S. Ct. 1710.  The <u>Brecht</u> Court cited as compelling factors "the State's interest in the finality of convictions that have survived direct review within the state court system," principles of "comity and federalism," the need to avoid degrading the significance of trial or encouraging relitigation of claims, the character of habeas corpus as an unusual remedy, and the social costs and practical difficulties of retrying a defendant after a grant of habeas relief.

<u>Grossman</u>, 466 F.3d at 1339.

In the present action, the Court agrees with the Alabama Court of Criminal Appeals that the evidence of Petitioner's guilt is overwhelming.   First and foremost, as the state court found, Petitioner confessed to sexually abusing the victim, his grandson. The State proffered Petitioner's tape recorded confession, and it was admitted into evidence only after Petitioner's attorney stated that he had "no objection." (Doc. 23, att. 2 at 98).   Second, there was evidence at trial that, when Officer McGowan told Petitioner that he was conducting an investigation involving Petitioner's eight-year-old grandson, Petitioner agreed to ride with him to the sheriff's office to talk about it, but he never once asked Officer McGowan what the investigation was about, which Officer McGowan thought was "unusual."   (Id. at 100-01).   Moreover, during the interview, Petitioner asked Officer McGowan, "what would happen to somebody if they committed the crime that he was being accused of." (Id. at 96).

Given the overwhelming evidence of Petitioner's guilt, particularly his own confession, the Court cannot say that the admission of the victim's hearsay statements, if erroneous, "had a substantial and injurious effect or influence in determining the jury's verdict." Grossman, 466 F.3d at 1339.   Therefore, assuming error in the trial court's admission of the victim's hearsay statements, the Alabama Court of Criminal Appeals reasonably determined that it amounted to harmless error, and that decision was not contrary to clearly established federal law.

Furthermore, the Court agrees with the Alabama Court of

Criminal Appeals that the State established the *corpus delicti*[8] of the charged offense, first degree sexual abuse.  In addition to the evidence recited by the Alabama Court of Criminal Appeals,[9] the record shows that Officer McGowan testified, *without objection*, that he was contacted by the Baldwin County DHR and notified that they had received a complaint that a child, "B.P.," had been sexually abused. (Doc. 23, att. 2 at    91).  Officer McGowan testified, *without objection*, that the child told him and Ms. Buehler that Petitioner had touched him on his "bad spots," his "butt cheeks." (Id. at 95, 99, 101).  In addition, Ms. Buehler testified, *without objection*, that she asked the child if anyone had ever touched him on his "private parts" before, "and he said, yes, his granddaddy had." (Id. at 107).  This evidence, apart from the evidence recited by the Alabama Court of Criminal Appeals, establishes the commission of the crime charged in this action. Therefore, Petitioner's argument that the State failed to establish the *corpus delicti* of the charged offense is without merit.

Based upon a review of Petitioner's Sixth Amendment claim, which was considered by the Alabama Court of Criminal Appeals and

---

[8] "The term, meaning body of the offense, connotes the actual commission of the crime by someone." Ex parte Thomas, 445 So. 2d 939, 941 (Ala. 1983).

[9] As noted above, the Alabama Court of Criminal Appeals relied on evidence admitted, *without objection*, through Ms. Buehler, the social worker, that the child had told her that someone had touched his private parts.  In addition, the evidence included drawings by the child showing what part of his body was touched, which were also admitted without objection. The court held that this evidence established that a crime had been committed. T.P., 911 So. 2d at 1125.

denied on the merits, the Court finds that Petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law as set forth in Supreme Court case law, or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.   Likewise, Petitioner has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case.   Thus, Petitioner has not established that he is entitled to relief under § 2254(d)(1).   In addition, Petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   This Court must presume as correct the determinations of all factual issues made by the state court.   28 U.S.C. § 2254(e).   Petitioner has not rebutted that presumption of correctness by clear and convincing evidence.   Accordingly, Petitioner's request for habeas relief on the basis of his Sixth Amendment claim is due to be denied.

III. <u>Conclusion</u>

Having carefully considered the record in this matter and the submissions of the parties, the undersigned Magistrate Judge is of the opinion that Petitioner's Sixth Amendment rights were not violated and that his request for habeas corpus relief on the basis

of his Sixth Amendment claim should be denied.   The undersigned further recommends that the following claims be dismissed without prejudice for failure to exhaust:(1) Petitioner's claim that his inculpatory statements were involuntary; (2) Petitioner's claim that the indictment failed to charge an offense; and (3) Petitioner's claim that his life sentence constituted cruel and unusual punishment.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **5**[th] day of **January, 2009.**

                    **/S/ SONJA F. BIVINS**
        **UNITED STATES MAGISTRATE JUDGE**




MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT


1.   Objection.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a

"Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   Opposing party's response to the objection.    Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   Transcript (applicable where proceedings tape recorded).  Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **5th** day of **January, 2009.**

                    /s/ SONJA F. BIVINS
            **UNITED STATES MAGISTRATE JUDGE**